**SO ORDERED.**

**SIGNED this 20 day of December,2013.**

_____
Stephani W. Humrickhouse
United States Bankruptcy Judge

_____

UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NORTH CAROLINA
WILMINGTON DIVISION

IN RE:

FAYURIA ANN POPE MOSS,                    CASE NO. 13-04223-8-SWH
                                          CHAPTER 13
      DEBTOR.

## ORDER

This matter came before the court on the debtor's motion for determination of the secured status and modification of Green Tree Servicing LLC's ("Green Tree") claim. A hearing was held in Wilmington, North Carolina on November 19, 2013.

### BACKGROUND

The debtor purchased a 1998, 28 x 56 Woodland Park mobile home and real property at 3519 Grist Creek Wynd, Leland, North Carolina 28451, and executed a promissory note in the original amount of $84,203.90 in favor of Conseco Finance Servicing Corp ("Conseco"). In connection therewith, the debtor executed a security agreement granting Conseco a security interest in, among other things, the mobile home and the real property. The debtor also executed a deed of trust in favor of Conseco granting a security interest in the real property and the mobile

1

home. Conseco subsequently assigned its rights under the loan documents to Green Tree. Green Tree filed a proof of claim on July 27, 2013, for a secured claim in the amount of $106,599.73, which Green Tree asserts is the fair market value for the mobile home and real property.

On October 3, 2013, the debtor filed her amended motion for determination of the secured status and modification of Green Tree's claim. In her motion, the debtor asserts that because Green Tree's claim is secured by personal property in addition to real property, the anti-modification provision of § 1322(b) does not apply and therefore the claim can be modified and bifurcated pursuant to § § 506(a) and 1322(b)(2). The debtor seeks to have the claim of Green Tree declared partially secured in the amount of $33,500, the fair market value according to the debtor,[1] and the deed of trust recorded in Book 1372, Page 1017 of the Brunswick County Register of Deeds declared void and ordered to be cancelled and removed of record upon the debtor's completion of the chapter 13 plan and entry of discharge. Green Tree opposes the motion on the grounds that the anti-modification provision of § 1322(b)(2) applies.

In support of her assertion that the claim is secured by personal property as well as real property, the debtor argues that the security agreement granted additional security in a stove, a refrigerator, insurance premiums, and refunds and that the mobile home itself is personal property rather than real property. Both of the debtor's arguments, the pledge of additional collateral and the characterization of the mobile home as personal property, originate in the language of the loan documents, specifically, the Manufactured Home Promissory Note, Security Agreement and Disclosure Statement (the "security agreement"). According to the debtor, the

---

[1] The value of the home is not an issue as the parties have stipulated to the valuation provided by the debtor.

language of the security agreement evidences the parties' intentions that the home retain its character as personalty. The security agreement states:

> **10. PROTECTION OF THE MANUFACTURED HOME:** [the debtor] will (a) keep the Manufactured Home in good condition and not commit waste; (b) pay all taxes, charges and lot rent due for the Manufactured Home and the real estate it is located on; (c) not move, use illegally, sell lease or otherwise transfer the Manufactured Home; (d) not attach the Manufactured Home to any real estate and the Manufactured Home will always be treated as personal property unless [the lender] consent[s] in writing and state law permits such contrary treatment; and (e) not let anybody else have any interest in the Manufactured Home.
>
> **11. PERSONAL PROPERTY:** [the debtor agrees] that regardless of how [the] Manufactured Home is attached to the real property and regardless of how [the lender's] security interest in [the] Manufactured Home is perfected and regardless of whether an affidavit of affixture (or other similar instrument identifying the property as a fixture) has been recorded, [the] Manufactured Home is and shall remain personal property and is not and shall not become a fixture or part of the real property unless [the lender] consent[s] in writing and state law permits a contrary classification. [The debtor agrees] to pay any and all personal property taxes assessed against [the] Manufactured Home and agree[s] that failure to pay such taxes shall constitute a default under paragraph 16 on page 3.

In arguing that the security interest covered additional property, the debtor points again to the security agreement which specifically covers a stove and refrigerator sold with the mobile home. With respect to any premium refunds or insurance proceeds which the debtor is entitled to, the security agreement states:

> **7. SECURITY INTEREST:** [The debtor gives the lender] a security interest under the applicable certificate of title law or Uniform Commercial Code in the Manufactured Home and any property added or attached to it, to secure [the debtor's] obligation under this Agreement. [The debtor] also [grants to the lender] a security interest in any interest [the debtor] may have in premium refunds or proceeds under any insurance covering the Manufactured Home.

The deed of trust recorded in the Brunswick County Register of Deeds contains neither the language regarding the personal property nature of the manufactured home nor the additional

3

collateral provision found in the security agreement.  The deed of trust simply identifies the real property, at 3519 Grist Creek Wynd, Leland, North Carolina 28451, and the security interest in the mobile home.  Green Tree argues that because the land and mobile home were purchased together, the deed of trust is the only controlling document.

At the hearing, the debtor described the home's placement on the land.  The wheels and axles have been removed from the home; the towing tongue has been disengaged and remains underneath the house. There are no porches, decks or patios. In fact, no improvements have been made to the home since it was purchased.  There are steps leading up to the front and back of the home, as well as vinyl skirting around the bottom of the home; however, the skirting is in poor condition and the underside of the home can be easily viewed and accessed.  The home sits on cinder blocks and concrete and can be removed without damage to the land.

## DISCUSSION

Section 506(a) and section 1322(b)(2), read together, allow for bifurcation of a secured creditor's claim into secured and unsecured portions if the amount of the claim exceeds the value of the collateral, In re Bradsher, 427 B.R. 386, 388 (Bankr. M.D.N.C. 2010), except where the claim is secured only by real property that is classified as the debtor's principal residence.  11 U.S.C. § 1322(b)(2).

In In re Proctor, this court held that in determining whether real property is a debtor's "principal residence," for purposes of the Bankruptcy Code's anti-modification provision, the court looks to the loan documents giving rise to the security interest.  494 B.R. 833 (Bankr. E.D.N.C. 2013).  Proctor involved a chapter 11 debtor who sought to modify a loan secured by real property that had been purchased as a second home but which the debtor, at the time of the

4

filing of the petition, was using as his principal residence. The court concluded that whether real property is the debtor's "principal residence" should be determined by looking at the loan documents rather than the status of the property at the date of the petition. Id. at 840. "That focus on what the parties originally bargained for, and what those parties understood their rights to be, [struck] this court as the most appropriate starting point when a debtor's principal place of residence is in dispute." Id.

In reaching its decision in Proctor, this court looked at other decisions in this circuit dealing with § 1322 analyses and noted that these decisions tended to look to the loan documents in determining whether the anti-modification provision applied. For example, the court examined the Fourth Circuit's decision in In re Ennis and found that it relied on the underlying security agreement in determining that the mobile home was not real property.

> To resolve the issue of whether the debtor's mobile home was real property under the new BAPCPA definition of "principal residence" or personal property, as the debtor argued, the court looked to state (Virginia) law to determine how the mobile home was taxed, and examined *the security agreement itself. In the agreement, the debtor "agreed that the mobile home would 'remain personal property' and that it would 'not become a fixture or part of the real property' without Green Tree's written consent.*"

Proctor 494 B.R. at 840-41 (citing In re Ennis, 558 F.3d 343, 346 (4th Cir. 2009)) (emphasis added); see In re Hughes, 333 B.R. 360, 361 (Bankr. M.D.N.C. 2005) (determination of applicability of 1322(b)(2) "should be made by examining the GMAC loan documents"). Looking at the loan documents as a whole allowed the court to make the principal residence determination "with reference to the specific point in time in which debtor and lender were in full agreement as to their expectations, and articulated them in the mortgage documents." Proctor, 494 B.R. at 841.

5

Other courts have examined the loan documents to determine whether the lender's security interest extends to property other than the debtor's primary residence such that the anti-modification provision of 1322(b)(2) does not apply. See In re Hughes, 333 B.R. 360, 362 (Bankr. M.D.N.C. 2005) (a creditor whose loan documents provide for a security interest in an escrow account is not secured solely by the security interest in the debtor's residence); In re Bosch, 287 B.R. 222, 227 (Bankr. E.D. Mo. 2002); In re Larios, 259 B.R. 675, 678 (Bankr. N.D. Ill. 2001); In re Howard, 220 B.R. 716, 718 (Bankr. S.D. Ga. 1998).

The agreement of the parties is evidenced by several loan documents, and therefore Green Tree cannot rely only on the provisions of the deed of trust for its position that the debtor's principal residence serves as its sole collateral. A review of the provisions of all of the loan documents is necessary. Having performed that review, the court finds the debtor has pledged additional security, other than the mobile home residence itself, for the loan in the security agreement and must be bound by that inclusion. "Creditors who demand additional security in personalty or escrow accounts and the like pay a price. Their claims become subject to modification. Their recourse, if they wish to avoid modification, is to forego the additional security." In re Hughes, 333 B.R. 360, 364 (Bankr. M.D.N.C. 2005); see also In re Stewart, 263 B.R. 728 (Bankr. W.D. Pa. 2001).

Although the additional security alone would bar imposition of the anti-modification provision, the court finds that Green Tree also has not persuaded it that the manufactured home is realty. The court finds that the provisions of the security agreement designating the manufactured home as personalty are at least as compelling as the implication in the deed of trust that it is realty. There is also no persuasive dispositive evidence that the manufactured home sits on a

6

permanent foundation in satisfaction of N.C. Gen. Stat. § 105-273, which sets out the characteristics of realty.  In re Terwilliger, No. 13-80749 (Bankr. M.D.N.C. August 16, 2013).

For these various reasons, the anti-modification provision of § 1322(b)(2) is not applicable.  Accordingly, the debtor's motion is **ALLOWED**. Green Tree's claim is secured in the amount of $33,500. Upon completion of the chapter 13 plan and entry of the debtor's discharge, the deed of trust recorded in Book 1372, Page 1017 of the Brunswick County Register of Deeds shall be declared void and cancelled.

**END OF DOCUMENT**